UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL SHARKS, )
 )
    Petitioner, )
 )
vs. ) Case No. 4:11CV1471 JCH
 )
JEFF NORMAN, )
 )
    Respondent. )

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Michael Sharks' pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is fully briefed and ready for disposition.

On April 16, 2008, a jury in the Circuit Court of the City of St. Louis, Missouri, found Petitioner guilty of one count of first-degree robbery and one count of armed criminal action. Petitioner was sentenced to fifteen years imprisonment on the first-degree robbery count and fifteen years imprisonment on the armed criminal action count, to be served concurrently. The Missouri Court of Appeals affirmed the convictions and sentence. State v. Sharks, 306 S.W.3d 100 (Mo. App. 2009). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied without an evidentiary hearing. The Missouri Court of Appeals affirmed the denial of post-conviction relief. Sharks v. State, 339 S.W.3d 627 (Mo. App. 2011).

Petitioner is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri. In the instant petition for writ of habeas corpus, Petitioner raises the following eight claims for relief:

    (1)    That the trial court erred in admitting evidence of the victim's out-of-court identifications of Petitioner;

(2) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to impeach the victim's identification of Petitioner;

(3) That Petitioner received ineffective assistance of counsel, in that trial counsel failed adequately to cross-examine Petitioner's co-defendant regarding whether he would receive favorable sentencing consideration in exchange for his testimony against Petitioner;

(4) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to point out a timing inconsistency when records indicated a detective simultaneously was with the co-defendant as the co-defendant wrote his statement, and also with the victim showing him Petitioner's picture;

(5) That the Missouri Court of Appeals erred in rejecting Petitioner's claim that trial counsel was ineffective for failing to impeach the victim's identification of Petitioner;

(6) That the Missouri Court of Appeals erred in rejecting Petitioner's claim that trial counsel was ineffective for consenting to a continuance, and for failing adequately to cross-examine Petitioner's co-defendant regarding whether he would receive favorable sentencing consideration in exchange for his testimony against Petitioner;

(7) That the Missouri Court of Appeals erred in rejecting Petitioner's claim that trial counsel was ineffective for failing to point out the timing inconsistency described in point 4 above; and

(8) That the post-conviction relief court erred in failing to issue findings of fact and conclusions of law on all claims raised in Petitioner's pro se post-conviction relief motion, and post-conviction relief counsel was ineffective for failing to incorporate Petitioner's pro se claims into the amended motion.

(§ 2254 Petition, PP. 6-33). The Court will address the claims in turn.

## DISCUSSION

**I.** **Non-Cognizable Claim**

Federal habeas relief is available to a state prisoner only on the ground that he is in custody in violation of a constitutional or federal statutory right. 28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.), cert. denied, 495 U.S. 936 (1990). Claims that do not reach

constitutional magnitude cannot be addressed in a petition for habeas corpus. Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991).

In Ground 8 of his petition, Petitioner first claims the post-conviction relief court erred in failing to issue findings of fact and conclusions of law on all claims raised in Petitioner's pro se post-conviction relief motion. "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding." Williams-Bey, 894 F.2d at 317. See also Bell-Bey v. Roper, 499 F.3d 752, 756 (8th Cir. 2007) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987)) ("the Constitution does not guarantee the existence of state post-conviction proceedings"), cert. denied, 553 U.S. 1035 (2008). Petitioner's claim that the post-conviction relief court erred in failing to issue findings of fact and conclusions of law on all claims raised in Petitioner's pro se post-conviction relief motion is collateral to his conviction and detention, and therefore is not cognizable in a federal habeas petition. Williams-Bey, 894 F.2d at 317.

Petitioner next claims post-conviction relief counsel was ineffective for failing to incorporate Petitioner's pro se claims into the amended 29.15 motion. There is no constitutional right to effective assistance of post-conviction counsel. Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir.) (citing Nolan v. Armontrout, 973 F.2d 615, 617 (8th Cir. 1992)), cert. denied, 513 U.S. 983 (1994). Because ineffective assistance of post-conviction counsel does not raise an issue of constitutional magnitude, this portion of Ground 8 of the instant petition is not cognizable in this proceeding and must be denied.

**II.     Grounds Addressed On The Merits**

    **A.     Ground 1**

In Ground 1 of his petition, Petitioner asserts the trial court erred in admitting evidence of the victim's out-of-court identifications of Petitioner. Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals denied the claim as follows:

> For his sole point on appeal, defendant[1] argues that the trial court erred in admitting evidence of the victim's out-of-court identifications. Defendant contends that the police procedures for the lineups were unduly suggestive and that this suggestiveness made the identifications unreliable. Defendant challenges the admission of State's Exhibit 2, the photo-lineup that the victim viewed the day of the robbery, and State's Exhibit 7, a photograph of the live-lineup.
>
> State's Exhibit 2
>
> In order to properly preserve a challenge to identification testimony, a defendant must file a pretrial motion to suppress, object timely at trial, and include the issue in his motion for new trial. State v. Wendleton, 936 S.W.2d 120, 123 (Mo.App. 1996). Defendant concedes that he failed to timely object to the introduction of State's Exhibit 2 at trial. Because defendant failed to object at trial to the admission of State's Exhibit 2, the issue is not preserved for appeal, and our review is limited to determining whether the trial court committed reversible plain error. Rule 30.20.
>
> We will not review a claim of plain error under Rule 30.20 unless there are substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. State v. Chaney, 967 S.W.2d 47, 59 (Mo. banc 1998), cert. denied, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). There are no extraordinary circumstances in this case to justify reviewing this argument as a matter of plain error. State v. Mosley, 980 S.W.2d 1, 3 (Mo.App. 1998). See State v. Chambers, 234 S.W.3d 501, 512 (Mo.App. 2007); State v. Glover, 951 S.W.2d 359, 363 (Mo.App. 1997).
>
> State's Exhibit 7
>
> We limit our review of a trial court's ruling on a motion to suppress to a determination if sufficient evidence existed to sustain the trial court's findings. Chambers, 234 S.W.3d at 512. We review the facts and all reasonable inferences in the light most favorable to the ruling and disregard all contrary evidence and inferences. Id. "We will not disturb the trial court's decision to admit or exclude evidence unless there has been an abuse of discretion." Id.

---

[1] On direct appeal, Petitioner is referred to as "Defendant" by the Missouri Court of Appeals.

Identification testimony is admissible unless the pretrial identification procedure is impermissibly suggestive and this suggestive procedure made the identification unreliable. State v. Middleton, 995 S.W.2d 443, 453 (Mo. banc 1999). "A pre-trial identification procedure is unduly suggestive if the identification results not from the witness's recollection of first-hand observations, but rather from the procedures or actions employed by the police." Chambers, 234 S.W.3d at 513.

In determining the reliability of a witness's identification, we consider: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the interval between the event and the identification procedure. Middleton, 995 S.W.2d at 453; Chambers, 234 S.W.3d at 513. However, the defendant must establish that the policy procedures were impermissibly suggestive before review of the reliability of the identification is necessary or appropriate. State v. Allen, 274 S.W.3d 514, 526 (Mo.App. 2008); Chambers, 234 S.W.3d at 513.

Defendant contends that the police procedures used for the photo and live-lineup were unduly suggestive because the victim never completely saw the robber's face. Defendant emphasizes that the victim did not see the robber's face because he wore a hat, hood, and scarf that covered his face from the middle of his forehead to the top of his upper lip. Defendant further asserts that the victim could only identify him after he "used his fingers to cover above the forehead and below the bottom lip on each photo in State's Exhibit 2."

"[A] lineup is made unduly suggestive when the suggestiveness results from police procedures." State v. Glover, 951 S.W.2d 359, 363 (Mo.App. 1997). A lineup is not unduly suggestive when the alleged "taint" in the identification procedures originates from a nongovernmental source. Id.

In the present case, the victim asked if he could cover part of the faces of the persons in the photos. By covering part of the face, the victim enhanced the reliability of his identification by limiting the photos to the view he had of defendant's face. See State v. Lewis, 874 S.W.2d 420, 424-25 (Mo.App. 1994). The method used by the victim when he viewed the photo lineup goes to the reliability of the identification and not the suggestiveness of the lineup. See id. In addition, defendant's assertion that the victim never completely saw the robber's face also goes to reliability of the identification. Because the record reflects that the lineups were not impermissibly suggestive, review of the reliability of the identification is not necessary. See Allen, 274 S.W.3d at 526; Chambers, 234 S.W.3d at 513. Point denied.

(Resp. Exh. D, PP. 3-6 (footnote omitted)).

### 1. State's Exhibit 2, Photo-Lineup

"As a prerequisite to federal habeas corpus review, a petitioner must exhaust state remedies and present the *same legal theories and factual bases* to the state courts." Luton v. Grandison, 44 F.3d 626, 628 (8th Cir. 1994) (citations omitted), cert. denied, 513 U.S. 1195 (1995). Procedurally defaulted claims may be considered if Petitioner can demonstrate (1) adequate cause for his default and (2) actual prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). In order to demonstrate adequate cause, Petitioner must show that some objective factor external to the defense impeded his effort to comply with the state procedural requirement. Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of objective factors external to the defense include "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable." Id. (citations omitted).

In order to demonstrate prejudice Petitioner must, "shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

Upon consideration, the Court finds that the portion of Ground 1 of Petitioner's petition addressing the photo-lineup is procedurally barred. The Missouri Court of Appeals found that this issue was not properly preserved for appeal because Petitioner did not make a timely objection during trial. Furthermore, Petitioner has not demonstrated adequate cause for his failure to comply with state procedural requirements, nor has he demonstrated prejudice to the effect that his entire trial was infected with errors of constitutional dimensions.

### 2. State's Exhibit 7, Photograph Of The Live-Lineup

With respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

Upon consideration, this Court holds the Missouri State court's finding with respect to the admission of State's Exhibit 7, the photograph of the live-lineup, was neither contrary to federal law, nor based on an unreasonable determination of the facts in light of the evidence presented. "Clearly established Federal law, as determined by the Supreme Court of the United States, requires a two-step inquiry into photographic arrays." Schawitsch v. Burt, 491 F.3d 798, 802 (8th Cir. 2007) (citing Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). "The first step is to determine whether the array was impermissibly suggestive. If found so, the second inquiry is whether under the totality of the circumstances the array created a substantial risk of misidentification at trial." Id.

This Court's review of the record demonstrates the Missouri State court correctly applied the above standard. The court considered whether the identification procedure was "impermissibly suggestive," explaining that only if the procedure was suggestive would it consider whether that suggestive procedure rendered the identification unreliable. The court then correctly noted that a pretrial identification method is overly suggestive "when the identification results from police actions

or procedures rather than from the witness's recall of first-hand observations." Taylor v. Steele, 2011 WL 4089160 at *7 (E.D. Mo. Jul. 25, 2011) (citation omitted). Finally, the Missouri State court found the fact that the victim elected to cover portions of the faces of the persons in the photos was relevant solely to the reliability of the identification, and not to the suggestiveness of the lineup procedure. Under these circumstances, the Missouri State court's determination is entitled to deference pursuant to 28 U.S.C. § 2254(d), and Ground 1 must be denied.

**B.     Grounds 2 and 5**

The Court will address Grounds 2 and 5 together, because the two claims are essentially identical. In Ground 2 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to impeach the victim's identification of Petitioner. Ground 5 of Petitioner's petition, that the Missouri Court of Appeals erred in rejecting Petitioner's claim that trial counsel was ineffective for failing to impeach the victim's identification of Petitioner, is dependent on Ground 2. Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

> 2.          Movant[2] claims his trial counsel, Kelly Jager, was ineffective for failing to elicit favorable information and for eliciting damaging information from four witnesses at his trial.
>
> To prevail on a claim of ineffective assistance of counsel, a movant must show that his counsel's performance failed to conform to the degree of skill, care and diligence of a reasonably competent attorney and that he was thereby prejudiced. Williams v. State, 168 S.W.3d 433, 439 (Mo.banc 2005); Wilkes v. State, 82 S.W.3d 925, 927 (Mo.banc 2002). There is a presumption that counsel made all significant decisions in the exercise of his reasonable professional judgment and that any challenged action was part of counsel's sound trial strategy. Williams v. State, 168 S.W.3d 433, 439 (Mo.banc 2005); State v. Tokar, 918 S.W.2d 753, 761 (Mo.banc 1996). To demonstrate prejudice movant must establish that but for counsel's errors there is a reasonable probability that the outcome of the trial would have been different.

---

[2] Petitioner is referred to as "Movant" by the 29.15 motion court.

- 8 -

Wilkes v. State, 82 S.W.3d 925, 927-928 (Mo.banc 2002); Guese v. State, 248 S.W.3d 69, 72 (Mo.App. S.D. 2008). Prejudice only exists when trial counsel's error is outcome determinative. State v. Bickham, 917 S.W.2d 197, 199 (Mo.App. W.D. 1996). The fact an alleged error might have had some conceivable effect on the outcome is not sufficient. State v. Williams, 861 S.W.2d 670, 678 (Mo.App. 1993).

The extent of cross-examination is generally a matter of trial strategy. Kelley v. State, 24 S.W.3d 228, 233 (Mo.App. S.D. 2000). See also, Thomas v. State, 761 S.W.2d 246, 252 (Mo.App. 1988); Swearingin v. State, 629 S.W.2d 560, 563 (Mo.App. 1981). "Reasonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." Cole v. State, 152 S.W.3d 267, 270 (Mo.banc 2004).

The mere failure to impeach a witness does not automatically entitle a movant to relief. The movant must establish the impeachment would have provided a defense or changed the outcome of the trial. Lebbing v. State, 242 S.W.3d 761, 765-766 (Mo.App. S.D. 2008).

3. Movant first claims that with respect to Ian McGahan, the victim, that counsel failed to establish that movant was "conspicuously shorter than the person Mr. McGahan described," failed to challenge certain testimony of Mr. McGahan and asked leading questions eliciting information favorable to the State. The Court finds this claim to be without merit.

Movant claims Mr. McGahan "consistently described the robber, before and during trial, as being his same height or taller" and he references the deposition of Mr. McGahan which was filed with the Court. He acknowledges that counsel asked movant to stand during the course of the trial. This claim is without merit because if movant was conspicuously shorter than the victim, this would have been apparent when he was asked to stand. In addition, Mr. McGahan did not consistently describe the perpetrator as taller than himself. The following testimony occurred on page 10 of Mr. McGahan's deposition, a copy of which was filed with the Court:

> Q. Can you describe what you saw about him other than the gun?
>
> A. I recognized, you know, like I said, his height was about my height.
>
> Q. And how tall are you?
>
> A. Five-ten.

> Q. Now, when you say "about," do you think he was slightly taller, he was slightly shorter?
>
> A. I would say he was about my height, you know, give or take an inch, you know.
>
> Q. All right. So you think he was about five-ten, five-eleven?
>
> A. Five-ten, five-eleven.
>
> Q. Give or take. Okay.

(Resp. Exh. E, PP. 52-54). Petitioner advanced this claim on appeal of the denial of his Rule 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> In his first point on appeal, Movant[3] asserts that the motion court erred in denying his Rule 29.15 motion, without an evidentiary hearing, on his claim that his trial counsel was ineffective for failing to demonstrate that Movant was 2-5 inches shorter than the robber, and failing to impeach the victim's trial testimony identifying Movant as the robber. We disagree.
>
> The relevant facts are that Ian McGahan (Victim) described being robbed by a man wearing "a shirt or turtleneck...pulled up to just under his nose." Victim could only see the man's face "from about his forehead to about his top lip." Victim described the man as being approximately his same height of 5'10" or 5'11", give or take an inch. Victim identified Movant in a photograph spread, and again in a physical line-up, based on his "eyes, [and] the bridge of his nose," characterizing them as "very distinct." Others included in the physical line-up were from 5'7" to 6'1".
>
> For relief based on a claim of ineffective assistance of counsel, Movant must show by a preponderance of the evidence both that his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and that his counsel's deficient performance prejudiced him. Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006), citing Strickland v. Washington, 466 U.S. 668, 687-92 (1984). We "presume[] that counsel's conduct was reasonable and effective," and that any challenged action was part of counsel's reasonable trial strategy. Anderson, 196 S.W.3d at 33; see also Barnett v. State, 103 S.W.3d 765, 769 (Mo. banc 2003).

---

[3] On post-conviction appeal, Petitioner is referred to as "Movant" by the Missouri Court of Appeals.

> Movant first argues that his counsel was ineffective for failing to adequately establish for the record that Movant was "conspicuously" shorter than Victim. Movant is "between 5'6" and 5'8"," and although his counsel cross-examined Victim on his testimony regarding the robber's height and then asked Movant [to] stand at trial to demonstrate his shorter height, she did not contrast Movant's height to any specific measure. Movant asserts clear error in the motion court's denial writing that the allegation was "without merit because if movant was conspicuously shorter than the victim, this would have been apparent when he was asked to stand."
>
> Movant's counsel at trial cross-examined Victim on the height of the robber, and then had Movant stand to indicate that he was shorter than the described robber. Just because the jury was not convinced by this trial strategy does not make counsel ineffective for attempting it. See Worthington v. State, 166 S.W.3d 566, 573 (Mo. banc 2005) (reasonable choices of trial strategy, even if ineffective in hindsight, cannot form basis for claim of ineffective assistance of counsel). Further, Movant has not established that there was a conspicuous difference between his height and the robber's; rather, he concedes that the difference in height may have been as little as two inches. We will not find that his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances for not failing to measure him in court, as Movant now demands. Anderson 196 S.W. 3d at 33. The extent of cross-examination is left to the judgment of counsel. Davidson v. State, 308 S.W.3d 311, 317 (Mo.App. E.D. 2010).
>
> Even if trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, any deficiencies did not prejudice Movant. Anderson, 196 S.W.3d at 33; Williams, 168 S.W.3d at 439. The record shows that Victim did not identify Movant as the robber based on his height. The physical line-up included men with heights ranging from 5'7" to 6'0", and Victim testified that he recognized Movant from his face.

(Resp. Exh. I, PP. 3-5).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this

presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Upon consideration, the Court finds Petitioner's counsel did not render ineffective assistance of counsel, and as such the Missouri courts did not err in rejecting this portion of Petitioner's Rule 29.15 motion. With respect to deficient performance, the Court holds Petitioner's counsel's actions in cross-examining the victim regarding the perpetrator's height, and then asking Petitioner to stand in order to demonstrate to the jury that Petitioner was shorter than the described robber, fell within the wide range of professionally competent assistance sanctioned by Strickland. The Court further finds Petitioner fails to demonstrate the requisite prejudice; in other words, Petitioner fails to establish that measuring his exact height would have changed the outcome of the trial, because the victim identified Petitioner based on his distinctive face, eyes and nose, and not his height. Grounds 2 and 5 are denied.

### C. Grounds 3 and 6

In Ground 3 Petitioner claims he received ineffective assistance of counsel, in that trial counsel failed adequately to cross-examine Petitioner's co-defendant regarding whether he would receive favorable sentencing consideration in exchange for his testimony against Petitioner. Ground 6 will be addressed with Ground 3 since they are essentially the same claim. Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

4. Movant next claims his attorney was ineffective for agreeing to a continuance, after he had made a speedy trial demand, so that the State could make a "proffer" to Jim Winslow, a co-defendant; for failing to adequately question Mr. Winslow about the "proffer," and for failing to adequately bring out that 75% of the money taken from Mr. McGahan was in the possession of Mr. Winslow. Movant claims he suffered prejudice because without the continuance Mr. Winslow probably would not have testified for the State. He further contends counsel did not adequately cross-examine Mr. Winslow about any offers from the State with relation to a pending felony charge.

The Court believes the issue was sufficiently covered during the direct testimony of Mr. Winslow and during cross-examination. Mr. Winslow was driving his mother's white Mercury Cougar on the date of the robbery, he was going downtown to a homeless shelter to visit his brother who was having problems with another individual, and he picked up movant, Michael Sharks, to assist if there was trouble. Assistant Circuit Attorney Tanja Engelhardt asked Mr. Winslow whether he had been offered anything or promised anything in return for his testimony, and he responded, "no." During cross-examination, Mr. Winslow said no promise had been made and there were no agreements. Upon further questioning he said he was out on bond and he did not want his bond to be revoked. He also said his trial testimony was the same as the statement he made to the police on the day of the robbery and that the only reason for him to be in court was to say that he was the person who made the earlier statement. Finally, when Ms. Jager asked if he was hoping "something good is going to come out of this for you, right?" and he said "I wouldn't be mad, I wouldn't be mad if it did." He also acknowledged that when he first spoke to the police he initially denied everything, and then later at the station he "came clean."

The Court does not believe any failure to question Mr. Winslow further about his possession of a large amount of the stolen money had any effect on the outcome of the case. He testified that he had stolen money stuffed in his pocket when the police pulled him over and that the police took the money from him. He said the money came from movant.

(Resp. Exh. E, PP. 56-57 (footnote omitted)). Petitioner advanced this claim on appeal of the denial of his Rule 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

In his second point on appeal, Movant asserts that the motion court erred in denying his Rule 29.15 motion, without an evidentiary hearing, on his claim that his counsel was ineffective for consenting to a continuance and failing to adequately cross-examine the codefendant on whether he would receive a more favorable sentence in exchange for his testimony against Movant. We disagree.

As relevant to this appeal, Jim Wilson [sic] testified to the following at trial. He asked Movant to go downtown with him to confront someone who was threatening his brother. As Wilson checked on his brother, Movant went in a different direction, and Wilson did not see Movant until he came running back to the car. Wilson drove away and when he later dropped Movant off, Movant gave him $1,000 and told Wilson not to tell the police that he knew Movant. Wilson was taken in for questioning about an hour later, and although he originally denied knowledge of the robbery, that same day he wrote a statement relating the above events. Wilson was ultimately charged with receiving stolen property, which was pending at the time of trial. Wilson admitted two prior convictions: one for robbery, and one for carrying a concealed weapon. He stated that he had not been offered or promised anything in exchange for his testimony.

On cross-examination, Movant's trial counsel pressed Wilson on his pending charges, but Wilson repeated that he had not been made any promises in exchange for his testimony, that his testimony was the same as his written statement, and that he was testifying so that his bond on the pending charges would not be revoked. He acknowledged, however, that he "wouldn't be mad" if he benefitted from giving testimony.

Movant contends on appeal that his counsel's cross-examination of Wilson regarding his motive for testifying was ineffective because she did not impeach Wilson's testimony with the State's request for a continuance, in which it requested extra time to allow for a proffer to be made.

A defendant has a constitutional right to confront witnesses testifying against him, and to expose any potential bias or motivation that may influence the testimony. State v. Joiner, 823 S.W.2d 50, 52 (Mo.App. E.D. 1991). To this end, the defense may inquire into pending charges to determine whether a witness is testifying favorably for the government or where testimony was given in the expectation of leniency. Id. at 52-54 (reversible error when court did not allow defense to cross-examine witness on pending charges as evidence of potential bias if witness believed he would receive favorable treatment for his testimony).

As addressed in Point I, counsel's failure to impeach a witness will not entitle a movant to post-conviction relief unless the impeachment would have established a defense or changed the outcome of the trial. Wren, 313 S.W.3d at 219. Impeaching Victim's [sic] trial testimony here would not have provided Movant with a defense or changed the outcome of the trial. The jury had already heard Wilson testify that he had not been promised anything for his testimony, and was in fact simply repeating the content of his written statement made the day of the robbery, before any charges were brought against him.

> Movant's reliance on Joiner does not help him, because in Joiner, the error occurred in the trial court's failure to allow any cross-examination into the witness's potential motive of testifying in exchange for leniency on pending charges. Joiner, 823 S.W.2d at 52. Here however, Movant's counsel questioned Wilson extensively on his motive for testifying and whether he had been offered a more lenient sentence for his testimony. Because the extent of cross-examination is left to the judgment of counsel, we decline to find her ineffective. Davidson, 308 S.W.3d at 317.
>
> As for Movant's assertion that his counsel was ineffective for agreeing to two continuances, Movant's argument fails because he cannot show that, but for the continuances, the outcome of the trial would have been different. Stevenson v. State, 299 S.W.3d 762, 766 (Mo. App. S.D. 2009). Continuing the trial in order to secure the testimony of Wilson would not have changed the outcome of the trial, because the substance of his oral testimony was already available in the form of Wilson's written statement made to the police. In addition, the eyewitness testimony of Victim would have been sufficient to convict Movant. See State v. Williams, 277 S.W.3d 848, 853 (Mo. App. E.D. 2009) (eyewitness testimony can be sufficient to support conviction).

(Resp. Exh. I, PP. 6-9 (footnote omitted)).

Upon consideration, the Court finds Petitioner's counsel did not render ineffective assistance of counsel, and as such the Missouri courts did not err in rejecting this portion of Petitioner's Rule 29.15 motion. With respect to his claim regarding adequate cross-examination, the Court finds Petitioner's counsel's performance was not constitutionally deficient, as she thoroughly questioned Petitioner's co-defendant about his motive to testify, including any potential benefits he might receive.[4] Furthermore, with respect to his claim regarding the continuances, Petitioner fails to demonstrate the outcome of the trial would have been different absent his counsel's alleged error, for two reasons. First, as noted by the Missouri Court of Appeals, even assuming Mr. Winslow would not have testified absent the continuance, the substance of his oral testimony was already available in the form of Winslow's written statement made to the police. Second, Mr. McGahan's eyewitness

---

[4] Petitioner's co-defendant testified that although he would like to receive favorable treatment, no agreement existed between him and the prosecution.

testimony alone would have been sufficient to convict Petitioner. Under these circumstances, Petitioner's claim of ineffective assistance of counsel fails, and Grounds 3 and 6 must be denied.

**D.** **Grounds 4 and 7**

In Ground 4 Petitioner claims he received ineffective assistance of counsel, in that trial counsel failed to point out a timing inconsistency when records indicated a detective simultaneously was with the co-defendant as the co-defendant wrote his statement, and also with the victim showing him Petitioner's picture. Ground 7 will be addressed with Ground 4 because the claims are essentially identical. Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

> 6. Movant's final claim relates to Ms. Jager's cross-examination of Detective Joseph Cichacki and to her closing argument. Movant claims there was an inconsistency regarding where Detective Griffin was, and that counsel did not sufficiently highlight the discrepancy. Ian McGahan testified that a detective (Detective Griffin) brought a line-up card to his house from which he identified a person as the robber. Mr. McGahan put his initials on the card as well as the date and the time. Movant asserts that the date and time on the line-up card were December 23, 2005 and 2:00 p.m. Detective Cichacki testified that he was with Detective Griffin when they initially spoke with Jim Winslow in an interview room at Bridgeton. They then conveyed him downtown where Mr. Winslow signed a warning and waiver card and then made a written statement. The date and time on the bottom was 2:00 p.m. on December 23, 2005. Movant states that Detective Griffin could not have been in two different locations at the same time, the disparity calls into question the identification by Mr. McGahan and counsel was ineffective for allowing time to run out on her closing argument before she could fully address the disparity.
>
> 7. The Court does not believe further highlighting the disparity would have changed the outcome of the trial. Mr. McGahan was the victim of the robbery and he identified movant in the photo-spread, at a live line-up several months later and at[5]

---

[5] Original transcript ends here.

(Resp. Exh. E, PP. 59-60 (footnote omitted)). Petitioner advanced this claim on appeal of the denial of his Rule 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> In his third point on appeal, Movant contends that the motion court erred in denying his Rule 29.15 motion, without an evidentiary hearing, on his claim that his trial counsel was ineffective for failing to point out an inconsistency in the times written on two documents. We disagree.
>
> Movant asserts that Wilson's [sic] statement, written in presence of Detective Griffin, indicates that it was written at 2 p.m. on December 23, 2005 at the police station; however, the photograph line-up also indicates that Victim made his identification in front of Detective Griffin at 2 p.m. on December 23, 2005 at Victim's home. Movant argues that because Detective Griffin could not be in two places at once, trial counsel should have used this disparity to impeach Victim's identification. We agree with the motion court that highlighting this disparity would not have changed the outcome of the trial.
>
> The decision to impeach is considered a matter of trial strategy, and the movant bears the burden of proving the impeachment would have established a defense or changed the outcome of the trial. <u>Wren</u>, 313 S.W.3d at 219. We cannot see how impeaching Victim on a minor discrepancy that would almost certainly have been explained as a typographical error, would have established a defense or changed the outcome of the trial. Rather, counsel's trial strategy to attack Victim's identification and Wilson's motives in testifying seems a far more reasonable exercise of skill and diligence. <u>Anderson</u>, 196 S.W.3d at 33. Likewise, in light of the extensive evidence in addition to Victim's identification of Movant in the photograph line-up, counsel's trial strategy did not prejudice him. <u>Id.</u>

(Resp. Exh. I, PP. 9-10 (footnote omitted)).

Upon consideration, the Court finds Petitioner's counsel did not render ineffective assistance of counsel, and as such the Missouri courts did not err in rejecting this portion of Petitioner's Rule 29.15 motion. Counsel's decision not to impeach various witnesses on a minor timing discrepancy, when considered in light of all the circumstances, was not outside the wide range of professionally competent assistance, especially as such inconsistency could easily have been explained as a typographical error. Additionally, in light of the extensive evidence, eyewitness testimony and

identification of Petitioner presented at trial, the Court finds Ms. Jager's decision not to impeach the witnesses on this timing discrepancy did not prejudice Petitioner. Grounds 4 and 7 are denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

Dated this  14th  day of May, 2012.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE